Ruffin, C. J.
The Court does not accede to the- argument for the plaintiff, that he has a right to relief upon the ground merely, that his contract with Gibson was before administration granted and without authority, and that the subsequent administration vested the property in him, as administrator, and entitled him to recover the bond. For however that may be at law, yet relief can not be granted in this Court,,in a case like this — in which the bill admits, that there were no creditors- of the intestate, who owned the bond, and therefore shews, that the suit is prosecuted solely for the benefit of the next of kin, who were the- equitable owners, and who, as appears in the bill, all united in, or consented to the contract with Gibson. If the plaintiff had recovered at law,as administrator, equity would, at the instance of the defendant, restrain him from collecting the money, because it would be held by him for the persons, who had assigned their interest — which was the whole equitable interest — to the defendant at law ; and of consequence, the Court of equity can not give original relief in such a case to a mere administrator, in trust for the next of kin. Love v. Love, 3 Ired. Eq. 104.
*463 But we are of opinion, that the plaintiff is entitled to a decree upon the merits of the case. Not being the legal assignee, by endorsement, of either of the bonds, he had no action at law in respect of them. His only remedy was in equity, by a decree for payment by either the obligors in the bond, or by the person, Gibson, who passed it to him, as a subsisting security for the principal and interest appearing to be due on it, or out of the funds received or due upon the bond, which was obtained from ■the plaintiff without adequate consideration.
Here it may be observed, in the first place, that the last bond, in the hand of Smith, is, for the purpose of this cause, subject to be dealt with, as if it were still in the hands of Gibson, because it was not endorsed to Smith, and also because Smith’s answer is not supported by any evidence, that he paid any thing for the bond, so as to make him a purchaser. He is therefore a volunteer, and the fund in his hands is liable, as if it had remained in the hands of Gibson. Thus considered there is a plain equity for the plaintiff against it, if the bond was improperly obtained from him, and if, by reason of the insolvency of the parties, it should turn out, that the plaintiff should be unable to raise the money upon personal decrees against the obligors or Gibson. The question is, whether the plaintiff is entitled to such personal decree, for what amount and against whom ? -We think he undoubtedly is entitled to it for his whole debt and costs, against either Crawford and his sureties, or against Gibson. Crawford and one of the sureties suffered the bill to be taken for confessed, and the other sureties say that all or nearly all the money has been paid on the bond passed by Gibson to the plaintiff, and they submit to pay any balance that may be due thereon. The only question, as to them, is, then, as to the sum, if any, remaining due on this bond ; which will, according.to the course of the Court, be the subject of an inquiry before the master. The only remaining question is, whether the plaintiff has *464 ■not also a right to a decree against Gibson and the fund accruing from the other bond ; and we hold clearly that he has.
The defendant’s answer is an extraordinary and not a fair one, as to the .circumstances which led to the exchange of bonds. The account given in the bill is a natural and probable one, and the answer does not meet it, but equivocates. It denies indeed “ all fraud in obtaining the bond.” But how 1 Because, it says, “ the plaintiff was willing and anxious to make the exchange.” That was never denied by the plaintiff. But the question is, why he became thus anxious — at whose instance, and upon what inducements or representations ? The bill tells the reasonsbut the answer, though admitting the fact of the exchange, assigns no consideration whatever, that ,could have moved either party to it, that is, if the answer be taken, according to its generalities as if was probably intended to be understood, and without adverting to the cautious and special pleading manner in which it is expressed. The defendant says “that he did not assert that the principal or his sureties were determined to plead usury,” and that “ he did not advise or request the plaintiff to transfer the bond to him,, to avoid the effect of such plea.” But at the same time he admits, “ that he informed the plaintiff, that his father bought it for less than its nominal value,” and he gives no reason, why he was led to make that communication,'nor tells of its effect on the plaintiff and his mother and sisters, nor denies that those persons made the exchange, under the influence of that communication, nor gives any other fact or reason, that could have induced it, but that suggestion of this defendant’s. It is impossible not to see, that the answer keeps back much and material parts of what passed, and w.ell deserves to be called a dishonest .answer — such .as ought not to be put into any bill. For without some such inducement as that stated in the bill, ti.he transaction is the most unaccountable, that men in their *465 senses ever made. Gibson had already a suit pending ' on the bond of March 1840, and it had been standing for trial on “ payment and set-off” for a considerable lime. Now, both of the bonds were for precisely the same sum, with interest from the same day. Why then should either party wish to exchange ? Why does not the defendant inform us of his reason for wishing or consenting to it 1 lie does not intimate that it was to oblige his friend, Filhour, though, he represents the latter as so anxious for the bargain. The defendant then acted, not from a disposition to serve the plaintiff, but to serve himself. It is to be remembered, that by the exchange Gibson not only got but a bond for the same sum, which, upon its face, was due on the other bond, but also that he would thereby be put to the delay of a new suit on the bond, and have to pay the costs of the suit, which he had brought on the other bond. We should have liked this party to have told us, how he could have made such a bargain as this: and we doubt not he would have told it distinctly enough, if, as the bill states, he had not believed, that the defendants, in the suit ho had brought, would, to some extent, at least, make good their defence, and, in order to shift that loss from himself, procured an exchange of bonds with the family of Filhour, by hints and innuendos, that induced them to expect a defence, which would defeat their suit, on the bond which they held, and to think they might recover the same sum. on the other bond. It is true, the answer denies that the defendant concealed that the obligor insisted on the discharge of the bond he was to let him have, but he was obliged to admit, that he told the plaintiff, that there were in fact no payments or set-offs, that would or could legally be allowed, and indeed, he insists in his answer that there are none, for the reasons therein assigned. It is clear, therefore, that Gibson passed this bond as one, on which the whole sum mentioned in it and the interest were then due, and ought to be recovered by the plaintiff; *466 and therefore, that if it should turn out to the contrary, on the inquiry ordered, he ought in conscience, to make it good, for what the plaintiff received it. At present we need not carry the decree to Smith, because, if -the plaintiff can get the money decreed to him from the obligor and Gibson, that will satisfy him ; and there is no suggestion of the insolvency of either of those persons. If, however, they should be insolvent, then certainly Smith, if he has received the money, must answer the decree against Gibson; and perhaps also that against the other parties, if they have become insolvent pending the present proceedings. As to the last point though, there is no occasion to give any opinion, as it will stand over as one of the equities reserved for further directions. There must accordingly be a reference to ascertain what sum is due upon the bond, held by the plaintiff, from the obligors, after deducting all payments and set-offs, legal and equitable, against the same ; and whether the obligors are now able to pay the same, or if not, when they became unable.
Per Curiam.
Decree accordingly.